## IN THE UNITED STATES DISTRICT COURT FOR MARYLAND

**LEONARD JAIGOBIN and**
**RAJDULARI JAIGOBIN**
**12609 Hill Creel Lane**
**Potomac, Maryland 20854**

        **Plaintiff,**

    **v.**

**U.S. Bank, NA**
**800 Nicollet Mall**
**BC-MN-H210**
**Minneapolis, MN 55402**

   **Serve on:**
**THE CORPORATION TRUST, INC.**
**2405 York Road**
**Suite 201**
**Lutherville, Maryland 21093**

**Chase Bank**
**270 Park Avenue**
**New York, New York 10017**

   **Serve on:**
**THE CORPORATION TRUST, INC.**
**2405 York Road**
**Suite 201**
**Lutherville, Maryland 21093**

**James E. Clarke, et al.**
**Substitute Trustees**
**P.O. Box 2548**
**Leesburg, Virginia 20177**

     **Defendant(s).**

**Civil No: _____**

1

## CIVIL COMPLAINT

**NOW COMES** Plaintiff, Leonard Jaigobin, ("Borrower") by and through undersigned counsel, and asserts this action against the Defendant, U.S. Bank, N.A., Chase Manhattan Bank and James E. Clarke, et al. for violations of Maryland Annotated Code Title 13, §13-316, Fair Debt Collections Practices Act, (FDCPA), Financial Institutions Reform, Recovery and Enforcement Act of 1989, Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing, Breach of Fiduciary Duty, Unjust Enrichment, Fraud, Rescission and reasonable attorney's fees and costs. Pursuant to the aforementioned statutory authority, relevant common law and federal regulations used as guidance, the violations committed against the Plaintiff during the relevant period are as follows:

### JURISDICTION

1.     This civil action is authorized and instituted pursuant to the jurisdiction of the United States 28 USC §§ 1331 and 1332, the State of Maryland §1-105 and §6-201 of the Annotated Code of Maryland, Courts and Judicial Proceedings; and, also in accordance with the United States District Court for the District of Maryland.

### VENUE

2.     This judicial district has jurisdiction over the parties, since it is where the events giving rise to this litigation occurred.

### PARTIES

3.     "Plaintiff," is now, and at all times relevant to this action, a resident of the County of Montgomery, State of Maryland.

4.     "Defendant," U.S. Bank, N.A. (herein referred to as "America's") is a National Banking Association, doing business in the County of Montgomery, State of

Maryland.   Plaintiff is further informed and believes, and thereon alleges, that America's is the originator of the loan.  "America's" is the assignee of the loan via the OCC after the demise of the originating lender on the loan, Washington Mutual.

5.      Defendant, James E. Clarke, et al., Substitute Trustee (herein referred to as "Trustee") as Trustee for securitized trust ALTERNATIVE LOAN TRUST (herein referred to as "Trust") Plaintiff is informed and believes, and thereon alleges that, Defendant, "Trustee" is a trustee, doing business in the County of Montgomery, State of Maryland and is the purported Master Servicer for Securitized Trust and/or purported participation in the imperfect securitization of the Note and/or the Mortgage/Deed of Trust as more particularly described in this Complaint.

6.      Defendant, J. P. Morgan Chase Bank (herein referred to as "Chase") as Trustee for securitized trust.  Plaintiff is informed and believes, and thereon alleges that, Defendant Chase is a national banking association, doing business in the County of Montgomery, State of Maryland and the is the purported Master Servicer for Securitized Trust and/or purported participation in the imperfect securitization of the note and/or the mortgage/deed of trust as more particularly described in this complaint.

## ADMINISTRATIVE PROCEDURES

7.      Plaintiff has satisfied all administrative and judicial prerequisites to the institution of this action.

## FACTS COMMON TO ALL COUNTS

8.      This is an action brought by the Plaintiff for declaratory judgment, injunctive and equitable relief, and for compensatory, special, general and punitive damages.

9.     Plaintiff, homeowner, disputes the title and ownership of the real property in question (the "Home"), which is the subject of this action, in that the originating mortgage lender, and others alleged to have ownership of Plaintiff's mortgage note and/or Mortgage/Deed of Trust, have unlawfully sold, assigned and/or transferred their ownership and security interest in a Promissory Note and Mortgage/Deed of Trust related to the property, and, thus, do not have lawful ownership or a security interest in Plaintiff's home which is described in detail herein.  For these reasons, the Court should Quiet Title to the property in Plaintiff's name.

10.     Additionally, Plaintiff homeowner brings causes of action against all defendants for violation of the Fair Debt Collections Practices Act, (FDCPA), Maryland Consumer Protection Act- Title 13, Financial Institutions Reform, Recovery and Enforcement Act of 1989, Breach of contract, Breach of Covenant of Good Faith and Fair Dealing, Fraud, Breach of Fiduciary Duty, Unjust enrichment, Rescission, declaratory relief based, and violations of upon the facts and circumstances surrounding Plaintiff's original loan transaction and subsequent securitization.  Defendant's violations of these laws are additional reasons this court should quiet title in Plaintiff's property to Plaintiff and award damages, rescission, declaratory judgment, and injunctive relief as requested below.

11.     Plaintiff alleges that Defendants, and each of them, cannot show proper receipt, possession, transfer, negotiations, assignment, and ownership of Plaintiff's original Promissory Note and Mortgage, resulting in imperfect security interests and claims.

12.     Plaintiff further alleges that Defendants, and each of them, cannot establish possession and proper transfer and/or endorsement of the Promissory Note and/or proper assignment of the Mortgage herein; therefore, none of the Defendants have perfected any claim of title or security interest in the Loan.  Defendants, and each of them, do not have the

ability to establish that the Mortgage that secures the indebtedness, or Note, were legally or properly acquired.

13.     Plaintiff alleges that an actual controversy has arisen and now exists between the Plaintiff's and Defendants.  Plaintiff desires a judicial determination and declaration of their rights with regard to the Property and the corresponding Promissory Note and Mortgage.

14.     Plaintiff also seeks redress from Defendants identified herein for damages, for other injunctive relief, and for cancellation of written instruments based upon:

a.     An invalid and unperfected security interest in Plaintiff's Note hereinafter described, and;

b.     An incomplete and ineffectual perfection of a security interest in Plaintiff's Loan.

## FACTUAL ALLEGATIONS

15.     Plaintiff filed a Chapter 11 Petition in Bankruptcy (Case No. 08-17826) on June 12, 2008 in the United States Bankruptcy Court of the District of Maryland.

16.     That as a condition of his bankruptcy Fourth Amended Plan that was confirmed on October 11, 2013, Plaintiff agreed to a monthly payment arrangement of $3,701.00 to Wells Fargo and continue the process of loan modification with the lender.

17.     The plan sought to satisfy all pre-petition arrears of $22,747.85 over sixty months.

18.     Defendant has alleged that the Plaintiff defaulted on payment and obligation under the plan, by discontinuing his payments.

19.     Plaintiff discontinued his payments which were in excess of $148,662.60 because Wells Fargo failed to properly account for his good faith attempts to follow the conditions of the Fourth Amended Plan.

20.     Plaintiff's Mortgage was recorded with Montgomery County Recorder's Office on January 25, 2007.

21.     Plaintiff is informed and believes that no other documents of any nature have been recorded against Plaintiff's mortgage since the recordation of the Mortgage indicated above. This lack of recordation includes any alleged Assignments of Mortgage now claimed by any of the Defendants, and each of them.  .

22.     Plaintiff's good faith payments that were made to follow the conditions of the Fourth Amended Plan which were in excess of $148,662.60, were not being properly accounted for by the lender.

23.     Attorneys representing the lender in Plaintiff's bankruptcy case did not participate in the proceedings with the intent to negotiate a process to allow the initiation of an affordable modification plan.

24.     That by Court Order dated October 7, 2016 the Plaintiff(s) were discharged from their bankruptcy case and the authorization to proceed with enforcement of security interest in the property was granted to U.S. Bank, NA.

25.     Defendant Substitute Trustee James E. Clarke, et al. began foreclosure proceedings on around April, 2017.

26.     That the Substitute Trustee began the foreclosure process despite not being registered as a bona fide and licensed debt collector as is required under the Maryland Collection Agency Licensing Act.

27.     Plaintiff filed an administrative claim with the FDIC (NS1001515385) to review potential fraud or at the very least the misapplication of funds that resulted from the Defendant's handling of their mortgage.

28.     The Administrative filing was done because the original holder of the mortgage, Washington Mutual closed for business on  September 25, 2008 and the Office of Thrift Supervision and the FDIC were appointed Receiver.

29.     That by published notice, the receiver established December 30, 2008 as the last date to file an FDIC claim.

30.     The Plaintiff's were not given proper notice at the time to make it possible to file a timely claim.

31.     From 1998 until the financial crash of 2008-2009, over 60 million home loans were sold by originating lender banks to investment banks to be securitized in a complex series of billions of transactions.  The Plaintiff's home loan was one of the 60 million notes that were securitized.

32.     Securitization is the process whereby mortgage loans are turned into securities, or bonds, and sold to investors by Wall Street and other firms.  The purpose is to provide a large supply of money to lenders for originating loans, and to provide investments to bond holders which were expected to be relatively safe.  The procedure for selling of the loans was to create a situation whereby certain tax laws known as the Real Estate Mortgage Investment Conduit (hereinafter "REMIC") Act were observed, and whereby the Issuing Entities and the Lenders would be protected from either entity going into bankruptcy.  In order to achieve the desired "bankruptcy remoteness," numerous "True Sales" of the loans had to occur, in which loans were sold and transferred to the different parties to the securitization.

33.     A "True Sale" of the loan would be a circumstance whereby one party owned the Note and then sold it to another party.  An offer would be made, accepted and compensation given to the "seller" in return for the Note.  The Notes would be transferred, and the Deeds of

Trust assigned to the buyers of the Note, with an Assignment or Transfer made every step of the way, and, furthermore, each Note would be endorsed to the next party by the previous assignee or transferee of record.

34.     Each REMIC Trust created by the investment banks, would be funded with thousands to tens-of-thousands of mortgage notes.  In order to maintain their bankruptcy-protected status, REMIC's had to have closing dates by which every mortgage note and/or security device like a Mortgage of Mortgage/Deed of Trust was to be sold to the REMIC and had to be "owned" by the REMIC.  Once the REMIC closed, it could accept no more mortgage notes under the terms of REMIC law, and it would begin selling securities backed by payments from homeowners on the notes it "owned".

35.     How a particular mortgage loan ended up being transferred to a REMIC in the securitization process is governed by a contract known as a Pooling and Servicing Agreement ("PSA").  The PSA is a Trust Agreement required to be filed under penalty of perjury with the United States Securities and Exchange Commission ("SEC") and which, along with another document, the Mortgage Loan Purchase Agreement ("MLPA"), is the operative securitization document created by the finance and securitization industry to memorialize securitization transactions.

36.     When the Plaintiff in this case closed on his property, his original lender (or other entity claiming original or near original ownership of the note) signed a PSA that governed plaintiff's particular mortgage note.  The PSA agreement, as described in more detail below, detailed the closing date by which the homeowner's loan must be "sold" to the REMIC, and described exactly how the homeowner's note is to find its way from the original lender to the REMIC trust.

37.    A typical PSA calls for a homeowner's note to be transferred at least four times to different key parties before it comes into possession of the REMIC trustee.

38.    Plaintiff's note was in fact subject to the standard and regulated process of sale to investment trusts in 2007 by the original investor, Washington Mutual where the note remains today.

39.    Any sale, assignment, transfer, swap or assumption of an investment interest is required to be recorded to identify and authorize the new or changed interested parties rights and responsibilities and obligations,

40.    Defendants are not of record acquiring, assuming assigning or being assigned or otherwise gaining an interest in the Plaintiff's MBS and/or note.

41.    In this instance Plaintiff is the secured party creditor and the owner of title for the subject property located at 12609 Hill Creek Lane Potomac, Maryland 2054

42.    Plaintiff entered into a loan contract in March of 2007 for what he believed was to borrow money from Washington Mutual Bank, FA (the stated original lender on all closing documents including the Note and Security Deed) for the purchase of the property located at 12609 Hill Creek Lane in Potomac, Maryland.

43.    A promissory Note, hereafter described as a "Note" was prepared for, and in the name of the Plaintiff with an original loan number and MIN assigned to it to identify the secured instrument.

44.    At sometime unknown to Plaintiff, the Note and security deed were separated/split where the deed alone was separated from the note.  Based on this knowledge and belief, the Promissory Note had been pledged, hypothecated, and/or assigned as collateral security to an unknown entity.

45.     Plaintiff's Note was split apart or fractionalized, as separate accounting entries and deposited separately into Classes.

46.     Plaintiff also asserts that at some time unknown to Plaintiff without his authorization or signature, the Defendant changed the loan number (and/or a new note was created with Plaintiff's name and property address attached.

47.     The new loan number is not connected to Plaintiff, which is a misrepresentation and violation of FDCPA 15 U.S.C. § 1692 et Seq.

48.     To date, Plaintiffs are unaware of any involvement from Defendant Trustee in regard to any ownership interest in their loan.

49.     Upon information and belief, none of the Defendants are in possession of the original Note, and therefore, none of the Defendants can be a holder of the note or a holder in due course.  Without status as the Noteholder, none of the Defendants can enforce a lien against the Property.

50.     Plaintiff executed a series of documents, including but not limited to a Note and Mortgage, securing the Loan in the amount of the Note.

51.     Plaintiff also alleges that the Note was secured by the Mortgage.  Plaintiff alleges that as of the date of this filing of this complaint the Mortgage had not been properly assigned to any other party or entity.

52.     Plaintiff is informed and believes, and thereon alleges that at all times relevant, any assignment of a Mortgage without proper transfer of the obligation that it secures is a legal nullity.

53.     In order for any Defendant to have a valid and enforceable secured claim against Plaintiff's note, the party claiming the right to foreclose must prove and certify to all parties

that it can demonstrate that it had perfected its security interest in Plaintiff's Loan that is the subject of this action. Therefore, if Defendants and each of them, did not hold and possess the original Note and Mortgage to the Property, they are estopped and precluded from asserting any secured or unsecured claim, through their agents or otherwise.

54.     Additionally, Plaintiff who is an unsophisticated investor, relied on U.S. Bank to explain the workings of the entire sophisticated mortgage loan transaction, how the rates, finance charges, costs, and fees were computed, the inherent volatility of the loan products provided by U.S. Bank, and the risks involved with the transaction. Plaintiff alleges that any Defendant asserting any right, interest, or claim in Plaintiff's loan has assumed responsibility for such disclosures from U.S. Bank. Plaintiff further alleges that U.S. Bank and the remaining Defendants failed to explain this sophisticated transaction completely.

55.     The purpose of entering into the above-described mortgage loan transaction was for Plaintiff to eventually own the Property. That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendant's combined actions as alleged herein.

## CLAIM I

## LACK OF STANDING /WRONGFUL FORECLOSURE

56.     Plaintiff re-alleges the allegations of Paragraph 1 through 55, and incorporates them by reference herein.

57.     An actual controversy has arisen between Plaintiff and Defendants specified hereinabove, regarding their respective rights and duties, in that Plaintiff contends that Defendants, and each of them, do not have the right to foreclose on the property because Defendant, and each of them, have failed to perfect any security interest in the Property, or cannot prove to the court they have a valid interest as a real party in interest to foreclose.

Thus, the purported power of sale, or power to foreclose judicially, by the above specified Defendants, and each of them no longer applies.

58.     Plaintiff is informed and believes thereupon alleges that the only individual who have standing to foreclose is the holder of the note because they have a beneficial interest.  The only individuals who are the holder of the note are the certificate holders of the securitized trust because they are the end users and pay taxes on their interest gains; furthermore, all of the banks or other entities holding the note in the middle of the chain of transfers were paid in full.

59.     Plaintiff further contends that the above specified Defendants, and each of them, did not have the right to foreclose on the property because said Defendant, and each of them did not properly comply with the terms of Defendants own securitization requirements (contained in the PSA) and falsely or fraudulently prepared documents required for Defendants, and each of them, to foreclose as a calculated and fraudulent business practice.

60.     Plaintiff requests that this Court find that the purported power of sale contained in the Note and Mortgage/Deed of Trust has no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan involved numerous fraudulent, false, deceptive and misleading practices, including, but not limited to, violations of State laws designed to protect borrowers, which has directly caused Plaintiff to be at an equitable disadvantage to Defendants, and each of them.  Plaintiff further requests that title to the Property remain in its name, with said Mortgage/Deed of Trust remaining in beneficiaries name during the pendency of this litigation, and deem that any attempted sale of the property is "unlawful and void".

### Defendant Cannot be a Real Party in Interest in a Securitized Mortgage

61.    Since the creation of Plaintiff's Note herein and Mortgage/Deed of Trust, Defendant was named the beneficiary of the Mortgage/Deed of Trust.

62.    Plaintiff is informed and believes, and thereon alleges, that Defendant lacks the authority under its corporate charter to foreclose a mortgage, or to own or transfer an interest in a securitized mortgage because the charter limits its powers and duties to functioning as electronic registration system of certain types of securities.

63.    Plaintiff is informed and believes, and thereon alleges, that in order to conduct a foreclosure action, a person or entity must have standing.

64.    Plaintiff is informed and believes, and thereon alleges, that pursuant to Title 13-Consumer Protection Act (Maryland law), to perfect the transfer of mortgage paper as collateral, the owner should physically deliver the note to the transferee.  Without physical transfer, the sale of the note is invalid as a fraudulent conveyance or as unperfected.

65.    The note in the case at hand identifies the entity to whom it was payable, the original lender.    Therefore, the Note herein cannot be transferred unless it is endorsed; the attachments to the notice of default do not establish that endorsements were made, nor are there any other notices which establish that he original lender endorsed and sold the note to another party.

66.    Furthermore, insofar as the parties to the securitization of Plaintiff's note and mortgage/deed of trust base their claim that the note was transferred or assigned to Defendant U.S. BANK, the Trustee of the Securitized Mortgage herein, by the original lender, it is well established law that the assignment of a Mortgage/Deed of Trust does not automatically

assign the underlying promissory note and right to be paid and the security interest is incident of the debt.

67.     Pursuant to Maryland Annotated Code, §13-316, to perfect the transfer of mortgage papers as collateral for a debt, the owner should physically deliver the note to the transferee. Without physical transfer, the sale of the note is invalid as a fraudulent conveyance, or as unperfected.  The note herein specifically identifies the party to whom it was payable to and the note, therefore, cannot be transferred unless it is endorsed.

68.     Defendants, and each of them, cannot produce any evidence that the promissory note has been transferred; therefore Defendant U.S. Bank could only transfer whatever interest it had in the mortgage/deed of trust herein.  The promissory note and mortgage/deed of trust are inseparable; an assignment of the note carries the mortgage (i.e. mortgage/deed of trust) with it, while an assignment of the mortgage/deed of trust alone is a nullity.  Therefore, if one party receives the note and another party receives the mortgage/deed of trust (as in this case), the holder of the note prevails regardless of the order in which the interests were transferred.

69.     Defendants have failed to submit documents authorizing transfer, as nominee for the original lender, to assign the subject mortgage to the foreclosing trustee.  Hence Defendant lacked authority as mere nominee to assign Plaintiff's mortgage making any assignment from Defendant defective.

70.     In the instant action, Defendant, as the nominee not only lacks authority to assign the mortgage, but cannot demonstrate the Trustee's knowledge or assent to the assignment by Defendant to the foreclosing trustee.

71.     Any attempt to transfer the beneficial interest of a trust deed without actual ownership of the underlying note, is void under the law.  Therefore, Defendant cannot establish that it is

entitled to assert a claim in this case.  For this reason, as well as the other reasons set forth herein below, Defendant cannot transfer an interest in real property, and cannot recover anything from Plaintiff.

72.     Defendants, and each of them, through the actions alleged above, have or claim the right to illegally commence foreclosure under the note on the property via a foreclosure action supported by false or fraudulent documents.  Said unlawful foreclosure action has caused and continues to cause Plaintiff's great and irreparable injury in that real property is unique.

73.     The wrongful conduct of the above specified Defendants, and each of them, unless restrained and enjoined by an order of the court, will continue to cause great and irreparable harm to Plaintiff.  Plaintiff will not have the beneficial use and enjoyment of its Home and will lose the property.

74.     Plaintiff has no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiff.  Plaintiff has suffered and will continue to suffer in the future unless Defendants wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiff to determine the precise amount of damage it will suffer.

### CLAIM II
### VIOLATIONS OF "TITLE 13- CONSUMER PROTECTION ACT"
### SUBTITLE 3- "UNFAIR AND DECEPTIVE TRADE PRACTICES"

75.     Plaintiff re-alleges the allegations of Paragraphs 1 through 74, and incorporates them by reference herein.

76.     Plaintiff avers that Defendant failed to provide mortgagor a written notice containing:

1) The name, address, and telephone number of the new servicer and the address

where mortgage payments are to be forwarded; 2) the principal balance and escrow balance; 3) The telephone number of the contact designated under this subsection; 4) The responsibilities of the contact under this subsection; 5) A statement that the servicer's violation of this section will result in the servicer being held liable under this section.    US BANK used its control over Borrowers payments that were initiated by the bankruptcy proceedings Fourth Amended plan income to prevent Borrowers from timely making its payments and to default in accordance with the modification agreements.  Borrower was unsuccessful in getting U.S. BANK to credit his accumulated payments towards satisfaction of the Fourth Amended Bankruptcy plan.  Thus, when the Borrower was discharged from Bankruptcy in October of 2016, Once U.S. BANK found out about Borrower's allegations, Defendant retaliated against him by filing a foreclosure action.

77.    Penalties for noncompliance include: 1) liability for any economic damages caused by the violation and; 2) The penalties provided in this subsection are in addition to any other applicable remedies.

## CLAIM III

## TITLE IX- SEC. 951 FINANCIAL INSTITUTIONS REFORM, RECOVERY AND ENFORCEMENT ACT OF 1989

78. Plaintiff re-alleges the allegations of Paragraphs 1-77, and incorporates them by reference herein.

79. Plaintiff's payments were placed in a suspense account which were not ever applied to his mortgage.

80. Defendant's failure to apply his mortgage payments was a breach in chain in title interest.

81. Plaintiff made payments in excess of $148,000 because then Wells Fargo failed to properly account for his good faith attempts to follow the conditions of his bankruptcy.

82. Plaintiff filed an administrative claim with the FDIC due to the lack of credit for his payments to Wells Fargo.

83. Violations of this act shall not exceed $1,000,000.

## CLAIM IV
## VIOLATION OF FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA)

84. Plaintiff re-alleges the allegations of Paragraphs 1 through 83, and incorporates them by reference herein.

85. Plaintiff avers that the Fair Debt Collection Act (FDCPA) – Section 909 of the FDCPA, 15 U.S.C. § 1692g(b) gives consumers the right to seek verification of a debt from a debt collector.

86. Borrower requested that J.P Morgan Chase through Orlans P.C. provide written verification of their mortgage debts along with financial statements evidencing and supporting income and expenses and U.S. BANK refused.

87. Plaintiff properly disputed the indebtedness alleged by the Defendant in writing on more than one occasion.

88. Defendant U.S. Bank used deceptive and false statements as a routine part of their misleading business practice, in their written communications with Plaintiff in violation of FDCPA as described therein.

89.     Defendant James E. Clarke failed to register itself as a collection agency pursuant to

the Maryland Collection Agency Licensee Act.

## CLAIM V
### FRAUD MISREPRESENTATION AND FAILURE TO DISCLOSE

90.     Plaintiff re-alleges the allegations of Paragraphs 1 through 89 and incorporates them

by reference herein.

91.     U.S. BANK as a lender knowingly misstated material facts and knowingly concealed

material facts, which it has a duty to disclose and upon which the borrower has relied

to its detriment.

### FALSE DEFAULT

92.     Defendants concealed the fact that the Loans were securitized as well as the terms of

Securitization agreements, including inter alia: (1) Financial Incentives paid; (2) existence of

Credit Enhancement Agreements, and (3) existence of Acquisition Provisions.  By conceal-

ing the securitization, Defendant concealed the fact that Borrower's loan changed  in

character inasmuch as no single party would hold the note but rather the notes would be

included in a pool with other notes, split into tranches and multiple investors would

effectively buy shares of the income stream from the loans.  Changing the character of the

loan in this way had a materially negative effect on Plaintiff that was known by Defendant

but not disclosed.

93.     Defendant knew or should have known that had the truth been disclosed, Plaintiff

would not have entered into the Loans.

94.     Defendant intended to induce Plaintiff based on these misrepresentations and

improper disclosures.

95.    Defendant U.S. Bank as a lender benefited from misrepresentations it made to Borrowers.

96.    U.S. BANK negligently represented facts to Borrowers and the court when Defendant represented that Borrowers defaulted on their mortgages.

97.    Defendant U.S. BANK established a lender relationship with Borrowers and guarantor in which Defendant controlled Borrowers funds and had a fiduciary obligation to account for how said funds were expended.

98.    U.S. BANK entered a modification agreement setting forth the order and priority of disbursements to be made from Borrowers bank accounts controlled by THE BANK.

99.    U.S. BANK intentionally failed to pay Borrowers mortgages so that THE BANK could declare Borrowers mortgage in default and take Borrowers assets in a confessed judgment and foreclosure proceeding.

100.   Plaintiff(s) reasonably relied on Defendant(s) representation

101.   Plaintiff(s) were harmed.

102.   Plaintiff(s) reliance on U.S. BANK'S representation was a substantial factor in causing Plaintiff harm.

103.   As a direct result of the above stated actions, Plaintiff has sustained economic and non-economic damages.

## CLAIM VI
## BREACH OF CONTRACT

104.   Plaintiff re-alleges the allegations of Paragraphs 1 through 103 and incorporates them by reference herein.

105.  The Modification agreement was an offer by Defendant CHASE to forbear on foreclosing on Plaintiff's notes and mortgages that form the basis of this action.

106.  MODIFICATION: AGREEMENT:  Defendant CHASE knew or should have known that confession or judgment provisions, such as the one included in the Modification Agreement are not favored in the State of Maryland as it is similar to obtaining a default judgment.  Despite public policy and jurisprudence to the contrary, CHASE BANK included in the modification agreement a confession of judgment provision that constituted a waiver of important borrowers' rights which provided the foundation for Defendant's to obtain a judgment against Borrowers in the State of Maryland.

107.  Without assistance of counsel, Borrower accepted the modification Agreement under duress and threat of foreclosure.

108.  Borrowers complied with all the requirements imposed by CHASE BANK in order to modify the terms of the Notes and Mortgages.

109.  Plaintiff avers that the CHASE BANK effectively and unilaterally breached the modification agreement and placed Borrowers in default.

110.  CHASE BANK breached this agreement when it initiated the foreclosure process by placing Borrower in default.

## CLAIM VII
## UNJUST ENRICHMENT

111.  Plaintiff re-alleges the allegations of Paragraphs 1-110 and incorporates them by reference herein.

108.  Defendants and each of them, were the beneficiary's of financial gain conferred upon the Defendants by the Plaintiff.

109.   Defendants conspired and therefore possessed appreciation and knowledge of the benefit that they obtained from the Plaintiff.

110.   The Defendants accepted and retained the benefit under such circumstances as to make it inequitable for the Defendant(s) to retain the benefit without payment of its value or the return of money.

## CLAIM VIII
## NEGLIGENCE

111.   Plaintiff re-alleges the allegations of Paragraphs 1-110 and incorporates them by reference herein.

112.   US BANK as a lender provided specific assistance to Borrower and directly assumed control over Plaintiff's income.

113.   Plaintiff relied on U.S Bank as a lender.

114.   As lender, U.S. Bank is subject to certain duties as imposed by the banking industry.

115.   U.S. Bank as a creditor failed to perform its duties with reasonable care and in a manner consistent with the standard of the banking industry.

116.   U.S. Bank as a lender owed a duty to account for the income and expenses associated with Plaintiff's commitment to the modification agreement.

117.   Defendant breached their duty of care to Plaintiff when it failed to account to Plaintiff for his funds, thus allowing him to default in the eyes of the Bankruptcy Court.

118.   Defendant's breach was the direct and proximate cause of Plaintiff's injuries including but not limited to default, confessed judgments and foreclosure on his property.

119.   U.S. Bank as a lender's role in the transaction goes beyond the scope of its role as a traditional lender.

120.   As a lender, U.S. Bank assumed the role of controlling borrower.

121.   Plaintiff's funds by requiring as a condition precedent of mortgage loans that Plaintiff's give to U.S. Bank monthly payments into a bankruptcy plan that he did not receive credit for transacting.

122.   U.S.. Bank undertook the role to assist Plaintiff and used its control to engage in conduct that caused Plaintiff the harm of default, and foreclosure.  Plaintiff's harm arose from reliance on the conduct of Defendant who assumed responsibility to account to borrower/plaintiff's timely payment towards satisfaction of the modification agreement.

## CLAIM IX

## RESCISSION

123.   Plaintiff re-alleges the allegations of Paragraphs 1 through 122 and incorporates them by reference herein.

124.   Plaintiff seeks compensatory damages in an amount to be determined by proof at trial.

125.   Plaintiff seeks special damages in an amount to be determined by proof at trial;

126.   Plaintiff seeks General damages in an amount to be determined by proof at trial;

127.   Plaintiff seeks punitive damages as allowed by law;

128.   Plaintiff seeks Attorney's fees and costs of this action;

129.   Plaintiff seeks Declaratory Relief, including but not limited to the following Decrees of this Court that:

   (a)      Plaintiff, Plaintiff is the prevailing party;

   (b)      The Trustees of the Trusts have no enforceable secured or unsecured claim against the Property;

(c)   The Sponsor has no enforceable secured or unsecured claim against the Property;

(d)   The Depositor has not enforceable secured or unsecured claim against the Property;

(e)   The Mortgage Originator has no enforceable secured or unsecured claim against the Property;

(f)   That the Court will determine all adverse claims to the real property in this proceeding;

(g)   That the Plaintiff is entitled to the exclusive possession of the property;

(h)   That Plaintiff owns in fee simple, and is entitled to the quiet and peaceful possession of the above-described real property;

(i)   That Defendants, and each of them, and all persons claiming under them, have no estate, right, title, lien, or interest in or to the real property or any part of the property.

## CLAIM X

### CIVIL CONSPIRACY

130.   Plaintiff re-alleges the of Paragraphs 1 through 129 and incorporates them by reference herein.

131.   Defendant(s) joined together for their mutual gain and benefit.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Honorable Court should grant him the following relief, namely:

(i). That Defendant be enjoined from continuing any and all fraudulent practices;

(ii). That Defendant pays Plaintiff a sum in excess of $4,600,000 for compensatory damages, back pay, punitive damages, emotional distress;

(iii)  Find the Modification Agreement referenced herein unconscionable and void *ab initio*

(iv)  Enter judgment against U.S. Bank, Chase Manhattan and James E. Clarke, et al.,  and in favor of Plaintiff for each violation alleged in this complaint.

(v.).  That Defendant pays Plaintiff's costs and expenses and reasonable attorney=s fees as provided in connection with this action;

(vi).  That this Court grant other and such further relief to the Plaintiff as it deems just and proper.

**REQUEST FOR JURY TRIAL**

Respectfully submitted on behalf of Plaintiff,


_____/s/_____
Reuben B. Collins, II (MD Bar #14729)
R.B. Collins Law, LLC
3725 Leonardtown Road, Suite 214
Waldorf, MD 20601
(877) 564-7266
(240) 607-6642 (facsimile)
rcollins@dcmdlawyers.com