IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEONARD JAIGOBIN

    v.

U.S. BANK, NA, et al.

:
:
:   Civil Action No. DKC 18-1776
:
:
:

## MEMORANDUM OPINION

Presently pending and ready for resolution is the motion to dismiss filed by Defendants U.S. Bank NA (Defendant U.S. Bank) and JPMorgan Chase Bank, N.A. (Defendant Chase) (collectively, "Defendants"). (ECF No. 8). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted.

## I. Background

### A. Factual Background

The following facts are either alleged in the complaint or taken from matters of public record of which the court may take judicial notice.[1] In 2007, Plaintiff purchased the property

---

[1] In reviewing a motion to dismiss, the court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Here, Plaintiff does not attach to the complaint documents related to the underlying foreclosure action. However, in their motion to dismiss,

located at 12609 Hill Creek Lane, Potomac, Maryland 20854 (the

"Property"). To finance the purchase of the Property, Plaintiff

obtained a loan from Washington Mutual Bank, F.A. ("WaMu"),

evidenced by an adjustable rate note (the "Note") and secured by

a deed of trust (the "Deed of Trust").

On June 12, 2008, Plaintiff filed a Chapter 11 Petition in

Bankruptcy in the United States Bankruptcy Court of the District

of Maryland (the "Bankruptcy Court").[2] (ECF No. 8-1, at 3; *see

also* ECF No. 14, at 3).

"On September 25, 2008, the Office of Thrift Supervision

("OTS") closed WaMu, and the [Federal Deposit Insurance

---

Defendants attached relevant documentation related to the
purchase and foreclosure of Plaintiff's home, including the
Note, the Deed of Trust, and court documents. (*See* ECF No. 8-
3-ECF No. 8-11). Defendants cite to these records in their
pending motion to dismiss and Plaintiff does not dispute them.
Thus, the records may be considered without converting the
motion into one for summary judgment. *See Hall v. Virginia*, 385
F.3d 421, 424 n.3 (4th Cir. 2004); *Greens v. Wells Fargo Bank,
N.A.*, 927 F.Supp.2d 244, 246 n.2 (D.Md. 2013) ("A federal
district court may take judicial notice of documents from state
court proceedings and other matters of public record.").
Plaintiff's opposition to the motion to dismiss attaches an
assignment of the Deed of Trust, the results of a notary search,
copies of mortgage checks endorsed by Chase Home Finance or JPMC
Bank, and the affidavit of Michael Carrigan, a Certified
Mortgage Securitization Auditor. (*See* ECF No. 14-1-ECF No. 14-
5). Defendants argue that the affidavit is inherently
unreliable and asks the court to decline to consider it. (ECF
No. 15, at 2-4). The court will not consider the affidavit
because it is not a matter of public record and it is not
integral to the complaint.

[2] The statement of facts in Plaintiff's opposition to
Defendants' motion to dismiss restates verbatim most of the
facts in the facts section of Defendants' motion to dismiss.

Corporation ("FDIC")] was named as receiver." (ECF No. 8-1, at 2; *see also* ECF No. 14, at 3). "[Defendant] Chase acquired substantially all of WaMu's assets[,] while the FDIC retained its liabilities and gave notice that December 30, 2008 was the last date to file a claim with the FDIC concerning WaMu." (*Id.*)

"On June 3, 2013, [Defendant] Chase, as attorney-in-fact for the FDIC, as Receiver of WaMu, assigned the Deed of Trust to [Defendant] U.S. Bank (the "Assignment")." (ECF No. 8-1, at 3; *see also* ECF No. 14, at 3). "[Defendant] Chase recorded the Assignment in the Land Records of Montgomery County, Maryland[.]" (*Id.*) "On or about November 16, 2013, a notice providing for the transfer of the secured claim under the loan from WaMu to [Defendant] U.S. Bank was filed with the Bankruptcy Court, along with a notation that Select Portfolio Servicing, Inc. ("SPS") was the servicer of the loan." (*Id.*)

"On May 6, 2016, [Defendant] U.S. Bank filed a Motion for Authorization to Proceed with Enforcement of Security Interest Based on Post Confirmation Default, or in the alternative, for Order Granting Relief from Automatic Stay." (*Id.*) "By order dated October 7, 2016, the Bankruptcy Court held that Plaintiff had defaulted on his payment plans to [Defendant] U.S. Bank under his Fourth Amended Plan of Reorganization and granted [Defendant] U.S. Bank relief from the automatic stay to foreclose on the Property." (*Id.*)

Under the Fourth Amended Plan of Reorganization, "Plaintiff agreed to a monthly payment arrangement of $3,701.00 to Wells Fargo and [to] continue the process of loan modification with the lender."[3] (ECF No. 1, at 5 ¶ 16). The Fourth Amended Plan of Reorganization "sought to satisfy all pre-petition arrears of $22,747.85 over sixty months." (*Id.* at 5 ¶ 17). "Plaintiff discontinued his payments which were in excess of $148,662.60 because Wells Fargo failed to [account properly] for his good faith attempts to follow the conditions of the Fourth Amended Plan." (*Id.* at 5 ¶ 19).

"On July 7, 2017, James Clarke, as substitute trustee for [Defendant] U.S. Bank, filed a foreclosure action in the Circuit Court for Montgomery County, Maryland against Plaintiff and his wife, Case No. 434197V ("Foreclosure Action")."[4] (ECF No. 8-1 at 3-4; *see also* ECF No. 14 at 3-4).

---

[3] The reference to Wells Fargo is confusing and unexplained. Wells Fargo is not a party in this action. Plaintiff's checks, attached to his opposition to the motion to dismiss, identify Wa-Mu as the payee. (ECF No. 14-2; ECF No. 14-3; ECF No. 14-4). One check identifies "Chase Bank/WA-MU" as the payee. (ECF No. 14-3, at 6). There is no indication that Plaintiff's mortgage payments under the Fourth Amended Plan were ever made, or ever supposed to be made, to Wells Fargo. Review of the Bankruptcy Court docket suggests that the language referencing payment to Wells Fargo appears at some point between the Third and Fourth Amended Plan of Reorganization.

[4] On November 2, 2018, the court dismissed Defendants Clarke, et al., Substitute Trustees, because Plaintiff failed to show good cause as to why service had not been effected. (ECF No. 17).

**B. Procedural Background**

On June 15, 2018, Plaintiff filed a complaint setting forth ten causes of action: lack of standing/wrongful foreclosure (Claim 1); violation of the Maryland Consumer Protection Act ("MCPA") (Claim 2); violation of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA") (Claim 3); Violation of the Fair Debt Collection Practices Act ("FDCPA") (Claim 4); fraudulent misrepresentation and failure to disclose (Claim 5); breach of contract (Claim 6); unjust enrichment (Claim 7); negligence (Claim 8); rescission (Claim 9); and civil conspiracy (Claim 10). (ECF No. 1). Plaintiff's complaint also sought declaratory and injunctive relief. On September 5, 2018, Defendants filed a motion to dismiss. (ECF No. 8). On October 09, 2018, Plaintiff filed a motion for leave to file his response late, (ECF No. 13), and filed his response, (ECF No. 14). On October 23, 2018, Defendants replied, (ECF No. 15), and did not oppose Plaintiff's motion for leave to file his untimely response. The motion will be granted and the response was considered.

## II. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule

8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). Ultimately, a complaint must "'permit[ ] the court to infer more than the mere

possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

A plaintiff asserting fraud must also satisfy "the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud.'" *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed.R.Civ.P. 9(b)). The circumstances include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (citations and internal quotation marks omitted). The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim, protect the defendant against frivolous suits, eliminate fraud actions where all the facts are learned only after discovery, and safeguard the defendant's reputation. *Id.*

## III. Analysis

As a threshold issue, Defendants contend that the doctrine of claim splitting bars all of Plaintiff's claims. Like *res judicata*, "claim splitting 'prohibits a plaintiff from prosecuting its case piecemeal[ ] and requires that all claims arising out of a single wrong be presented in one action.'"

*Sensormatic Sec. Corp. v. Sensormatic Elec. Corp.* (*Sensormatic I*), 329 F.Supp.2d 574, 579 (D.Md. 2004) (quoting *Myers v. Colgate-Palomolive Co.*, 102 F.Supp.2d 1208, 1224 (D.Kan. 2000)). Unlike *res judicata*, however, a final judgement in the first suit is not required to bar the second suit. *See Sensormatic Sec. Corp. v. Sensormatic Elec Corp.* (*Sensormatic II*), 452 F.Supp.2d 621, 626 n.2 (D.Md. 2006); *see also* 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 4406 (3d ed. 2019) ("In dealing with simultaneous actions on related theories, courts at times express principles of "claim splitting" that are similar to claim preclusion, but that do not require a prior judgment."). Instead, the court is only required to "assess whether the second suit raises issues that should have been brought in the first." *Curtis v. Citibank, N.A.*, 226 F.3d 133, 140 (2d Cir. 2000). Defendants contend that Plaintiff filed a motion to dismiss in the pending Foreclosure Action that "raised the same allegations and arguments that Plaintiff makes in this case." (ECF No. 8-1, at 7). Defendants note that the state court "rejected all of Plaintiff's arguments and denied his motion to dismiss[]" and concludes that "the doctrine of claim splitting bars Plaintiff's claims in this action because they arise from the same transaction as the Foreclosure Action." (*Id.*) Plaintiff, misunderstanding the distinctions between claim splitting and

res judicata, responds that claim splitting does not apply because the Foreclosure Action "is still pending[.]" (ECF No. 14, at 5–6). The court need not conclude whether the doctrine of claim splitting precludes Plaintiff's claims because, even if it did not, Plaintiff fails to plead facts showing that he is entitled to relief.

### A. Lack of Standing/Wrongful Foreclosure

Plaintiff challenges Defendants' ability to foreclose on the Property. (ECF No. 1, at 11–15 ¶¶ 56–74). The complaint does not clearly outline the bases of Plaintiff's challenges. The gravamen of Plaintiff's claim appears to be that Defendants improperly securitized the Note and the Deed of Trust, rendering them unenforceable. (*Id.*) This challenge is unavailing because Maryland courts have recognized continually the propriety of securitization of mortgage loans. *Harris v. Household Fin. Corp.*, 14-cv-0606-RWT, 2014 WL 3571981, at *2 (D.Md. July 18, 2014) ("This [c]ourt and others in the Fourth Circuit have consistently. . . held[]" "that the securitization process does not make negotiable instruments and deeds of trust unenforceable[.]"); *Suss v. JPMorgan Chase Bank, N.A.*, 09-cv-1627-WMN, 2010 WL 2733097, at *5 (D. Md. July 9, 2010) ("The various arguments that Plaintiff advances to support his theory that the securitization rendered the Note unenforceable are also without legal support."). Moreover, Plaintiff cannot assert a

claim for "wrongful foreclosure" because no such cause of action exists under Maryland law. *See Davis v. Wilmington Fin., Inc.*, 09-cv-1505-PJM, 2010 WL 1375363, at *7 (D.Md. Mar. 26, 2010) ("Plaintiffs cite no authority, and the [c]ourt can find none, that 'Wrongful Foreclosure' is a separate cause of action in Maryland.").

### B.    Statutory Violations

Plaintiff argues that Defendants violated the Maryland Consumer Protection Act ("MCPA"), (ECF No. 1, at 15–16 ¶¶ 75–77), the Fair Debt Collection Practices Act ("FDCPA"), (*Id.* at 17–18 ¶¶ 84–89), and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), (*Id.*, at 16–17 ¶¶ 78–83).

Plaintiff claims that Defendants failed to provide notice required under the MCPA.   (ECF No. 1, at 15–16).   Defendants respond that this claim is time barred.   (ECF No. 8-1, at 12). In his opposition, Plaintiff argues that he filed his complaint "within three years of his learning of the MCPA violation[.]" (ECF No. 14, at 6–7).

The statute of limitations is an affirmative defense.   *See* Fed.R.Civ.P.  8(c).   A motion to dismiss filed under Rule 12(b)(6) may only reach the merits of an affirmative defense when "all facts necessary to the affirmative defense clearly appear *on the face of the complaint*." *Goodman v. Praxair, Inc.*,

10

494 F.3d 458, 464 (4th Cir. 2007) (internal citations and quotation marks omitted) (emphasis in original); *see also Long v. Welch & Rushe, Inc.*, 28 F.Supp. 3d 446, 456 (D.Md. 2014) ("The statute of limitations. . . should only be employed to dismiss claims pursuant to Rule 12(b)(6) when it is clear from the face of the complaint that the claims are time barred."); 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Proc. § 1357, at 352 (3d ed. 2019) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading[,]" rendering dismissal appropriate).

Under MCPA § 13-316(b), "[w]ithin 7 days of acquiring mortgaging servicing, a servicer shall send to the mortgagor a written notice containing [certain information] regarding the mortgage on the date of transfer[.]" The MCPA's statute of limitations is three years. *Master Fin. Inc. v. Crowder*, 409 Md. 51, 65 (2009).

The parties agree that "[o]n or about November 16, 2013, a notice providing for the transfer of the secured claim under the loan from WaMu to [Defendant] U.S. Bank was filed with the Bankruptcy Court, along with a notation that [SPS] was the servicer of the loan." (ECF No. 8-1, at 3; ECF No. 14, at 3). Therefore, the statute of limitations ran on Plaintiff's MCPA

claim on November 23, 2016 and bars his claim now. Plaintiff's argument that he "filed within three years of his learning of the MCPA violation" is unavailing because Plaintiff had knowledge of the facts giving rise to the alleged violation in 2013. *See Brown v. Neuberger, Quinn, Gielen, Rubin, & Gibber, P.A.*, 731 F.Supp.2d 443, 449 (D.Md. 2010) ("Under the discovery rule in Maryland, a plaintiff's cause of action accrues when the plaintiff knows or reasonably should have known of the wrong."); *see also Moreland v. Aetna U.S. Healthcare, Inc.*, 152 Md.App. 288, 297 (Md.Ct.Spec.App.) ("Knowledge of facts. . . not actual knowledge of their legal significance, starts the statute of limitations running.") (citations and quotation marks omitted).

Plaintiff claims that Defendants failed to provide written verification of his mortgage debts in violation of the FDCPA. (ECF No. 1, at 17–18). Defendants contend that the statute of limitations bars this claim, and that Plaintiff failed to allege that Defendants are "debt collectors" under the FDCPA. (ECF No. 8-1, at 11–12).

Section 1692g of the FDCPA provides:

> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall. . . send the consumer a written notice containing. . . a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion

> thereof, the debt will be assumed to be
> valid by the debt collector."

Here, there is no allegation identifying a communication – let alone an initial communication in connection with the debt collection – that fails to provide notice as set forth in the statute. The complaint contains no allegations that Plaintiff submitted a timely request for validation of his debt. Plaintiff appears to misread the statute; it does not require that a debt collector validate a debt within five days of contacting a consumer to collect that debt. Rather, the statute requires the debt collector to notify the consumer within five days of initial contact of his or her right to seek validation within 30 days. Plaintiff's conclusory allegations regarding Defendant's alleged failure to verify and validate the debt are insufficient to state a claim under the FDCPA.[5]

Finally, Plaintiff alleges that Defendants violated FIRREA by "fail[ing] to apply his mortgage payments" under the Fourth

---

[5] Plaintiff fails to state his FDCPA for additional reasons. Like the MCPA claim, the statute of limitations bars Plaintiff's FDCPA claim. The statute of limitations for an FDCPA claim is one year. 15 U.S.C. § 1692k(d). Plaintiff agrees that the November 16, 2013 notice identified Defendant U.S. Bank as the secured party and SPS as the servicer of the loan. In his opposition, Plaintiff elaborates and admits that he "became aware of the discrepancies that existed in his mortgage on or around April of 2017[.]" (ECF No. 14, at 6-7). He did not file his complaint until more than a year later, in June 2018. (ECF No. 1). Moreover, Defendants correctly note that Plaintiff fails to allege any facts to demonstrate that Defendants are debt collectors under the FDCPA.

Amended Plan of Reorganization. (ECF No. 1, at 16–17 ¶¶ 78–83). Plaintiff notes that he "filed an administrative claim with the FDIC due to the lack of credit for his payments to Wells Fargo." (*Id.* at 17 ¶ 82). Defendants contend that "[t]he [c]ourt lacks subject matter jurisdiction over" this claim because "Plaintiff was required to submit his FIRREA claim, and any other claim based on WaMu's actions, to the FDIC before the December 30, 2008 bar date." (ECF No. 8-1, at 13–14). Plaintiff responds that he did not receive proper notice of the December 30, 2008 bar date and was "not in a position to investigate and assert [his] rights in a timely manner[.]" (ECF No. 14, at 8). Defendants counter that Plaintiff was not entitled to actual notice and his late-filed claims were properly disallowed by the FDIC. (ECF No. 15, at 6–8).

The Fourth Circuit recently outlined FIRREA's relevant provisions:

> FIRREA establishes an administrative process that allows the FDIC, acting as receiver for a failed institution, to settle claims against that institution and liquidate its assets. To effectuate that process, FIRREA requires that claimants submit all of their claims against a failed institution to the FDIC before a certain date – the bar date. FIRREA allows claimants either to obtain administrative review, followed by judicial review, of any disallowed claim against a depository institution for which the FDIC is receiver, or to file suit for de novo consideration of the disallowed claim in a district court.

> But, except as otherwise provided in
> the Act, a court may not exercise
> jurisdiction over (i) any claim or action
> for payment from, or any action seeking a
> determination of rights with respect to, the
> assets of any depository institution for
> which the FDIC has been appointed receiver,
> including assets which the FDIC may acquire
> from itself as such receiver; or (ii) any
> claim relating to any act or omission of
> such institution or the FDIC as receiver.
>
> These provisions combine to create an
> exhaustion requirement that, we have
> concluded, is absolute and unwaivable. Put
> another way, FIRREA operates as a
> jurisdictional bar to claims that parties
> did not submit to the FDIC's administrative
> process."

*Willner v. Dimon*, 849 F.3d 93, 102–103 (4th Cir. 2017) (internal alterations, citations, and quotation marks omitted). Plaintiff's FIRREA claim makes little sense for at least two reasons. First, Plaintiff appears to challenge the actions of the FDIC and WaMu. They are not parties to this action. The applicability of FIRREA to either Defendant is inexplicable. Plaintiff provides no evidence that the FIRREA is applicable to Defendants' conduct here or that they violated its provisions with respect to him. Second, Plaintiff's FIRREA claim focuses on payments made under his bankruptcy plan. Plaintiff made all of these payments after WaMu closed, and all but three of these payments after the December 30, 2008 bar date. Plaintiff's statutory claims will be dismissed.

## C.  Fraudulent Misrepresentation

Plaintiff's fraudulent misrepresentation claim contends that "Defendants securitized the [N]ote and breached a loan modification by mishandling his payments." (ECF No. 14, at 8–9; *see also* ECF No. 1, at 18–19 ¶¶ 90–103).  Defendants contend that Plaintiff failed to plead his fraud claim with particularity and that "a fraud claim cannot arise from a breach of contract." (ECF No. 8-1, at 15–16).  Plaintiff's opposition to Defendants' motion to dismiss contends that "[f]urther discovery will enable. . . Plaintiff to provide additional details to support the claim[.]" (ECF No. 14, at 9).

Plaintiff fails to state a claim for fraudulent misrepresentation and to plead his claim with the requisite particularity.  Fraudulent misrepresentation is simply a means of committing fraud.  *See Sass v. Andrew*, 152 Md.App. 406, 432 (2003).  To make out a claim of fraud, a plaintiff must show "(1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Id.* at 429.

Plaintiff did not identify any specific false statement and his challenges to the Defendants' securitization of the Note are unavailing. *See Harris*, 2014 WL 3571981, at *2. Plaintiff failed to provide any facts to support the existence of a loan modification agreement, let alone its breach. In fact, it is unclear that either of the Defendants even executed a loan modification agreement with Plaintiff. Assuming an agreement existed, Plaintiff failed to describe how Defendants breached the purported loan modification and simply concludes that they mishandled payments under it. Plaintiff's contention that discovery will provide him additional details to support his claim ignores that one of Rule 9(b)'s purposes is to "discourage[e] fishing expeditions brought in the dim hope of discovering a fraud[.]" *Pub. Employees' Ret. Ass'n of Colo v. Deloitte & Touche LLP*, 551 F.3d 305, 311 (4th Cir. 2009).

### D. Breach of Contract, Unjust Enrichment, Rescission

Plaintiff raises breach of contract, unjust enrichment, and rescission claims. Plaintiff's breach of contract claim focuses on the purported modification agreement. (ECF No. 1, at 19–20, ¶¶ 104–10). Plaintiff alleges that "[t]he [m]odification agreement was an offer by Defendant Chase to forebear on foreclosing[,]" that "Defendant Chase knew or should have known that confession or judgment provisions. . . are not favored" in Maryland, and that Defendant Chase "effectively and unilaterally

breached the modification agreement[.]" (*Id.*) As discussed above, there is no evidence that either Defendant entered into a loan modification agreement with Plaintiff. Plaintiff inconsistently describes both Defendant U.S. Bank and Defendant Chase as parties to the modification agreement. *Compare* (ECF No. 1, at 19 ¶ 98) ("[Defendant] U.S. Bank entered a modification agreement. . . ) *with* (ECF No. 1, at 20 ¶ 105) ("The [m]odification agreement was an offer by [Defendant] Chase. . . ).

"It is well-established in Maryland that a complaint alleging a breach of contract 'must of necessity allege with certainty and definiteness' *facts* showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." *RRC Northeast, LLC v. BAA Maryland, Inc.*, 412 Md. 638, 655 (2010) (emphasis in original) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977). Plaintiff provides inconsistent details about the modification agreement and fails to allege with *certainty* and *definiteness* facts showing a contractual obligation owed by either Defendant. Plaintiff fails to state a claim for breach of contract.

Plaintiff's unjust enrichment claim contends that Defendants "were the beneficiar[ies] of financial gain conferred. . . by the Plaintiff[,]" that "Defendants conspired

and. . . possessed appreciation and knowledge of the benefit[,]"
and that "Defendants accepted and retained the benefit under
such circumstances as to make it inequitable for the
Defendant[s] to retain the benefit without payment of its value
or the return of money." (ECF No. 1, at 20-21).[6] "Unjust
enrichment requires[:] (1) a benefit conferred upon the
defendant by the plaintiff[;] (2) a defendant's appreciation or
knowledge of the benefit[;] and (3) the defendant's acceptance
or retention of the benefit under circumstances that would make
it inequitable for the defendant to retain the benefit without
the payment of its value." *Haley v. Corcoran*, 659 F.Supp. 2d
714, 723 n.9 (D.Md. 2009) (citing *Hill v. Cross Country
Settlements, LLC*, 402 Md. 281, 295 (2007); *see also Sanders v.
Cohn, Goldberg & Deutsch, LLC*, No. 15-cv-1571-DKC, 2016 WL
223040, at *7 (D.Md. Jan. 19, 2016) (citing *Hill*, 402 Md. at
295). "It is settled law in Maryland, and elsewhere, that a
claim for unjust enrichment may not be brought where the subject
matter of the claim is covered by an express contract between
the parties." FLF, Inc. v. World Publ'ns., Inc., 999 F.Supp.
640, 642 (1998) (citations omitted); *see also* Dunnaville v.
McCormick & Co., 21 F.Supp.2d 527, 535 (D. Md. 1998). Here,

---

[6] The complaint incorrectly numbers the paragraphs outlining
Plaintiff's unjust enrichment claim. The paragraph numbers are
nonconsecutive and duplicative of paragraph numbers in the
breach of contract and negligence claims.

there is an express mortgage agreement – the Note and the Deed of Trust. Plaintiff's claim for unjust enrichment will not lie. Plaintiff also alleges the existence of a modification agreement which would similarly prevent an unjust enrichment claim.

Plaintiff also seeks rescission, although the complaint is unclear about whether he seeks rescission of the Note and the Deed of Trust or rescission of the alleged modification agreement. (ECF No. 1, at 22–23 ¶¶ 123–129). Defendants contend that "Plaintiff's rescission claim fails as a matter of law because he has not alleged its prima facie elements." (ECF No. 8, at 16–17). Defendants emphasize that "Plaintiff has failed to allege facts showing that he was induced by any wrongful action by Defendants to enter into the loan contract[]" and "has not allege[d] that he has tendered, or is willing and able to tender, the loan proceeds to Defendants." (*Id.* at 17). Plaintiff responds that he "alleged that the Defendant[s] engaged in fraudulent activity[]" and "[t]he fraudulent activity forms the basis for [his] rescission claim." (ECF No. 14, at 10). Plaintiff failed to state a claim for fraud and his rescission claim will be dismissed.

### E. Negligence

Plaintiff's negligence claim appears to involve his payments under the bankruptcy plan. He contends that Defendant U.S. Bank "failed to account to Plaintiff" "for the income and

expenses associated with [his] commitment to the modification agreement[]" and alleges that this failure "allow[ed] him to default in the eyes of the Bankruptcy Court." (ECF No. 1, at 21-22 ¶¶ 111-122; *see also* ECF No. 14, at 9-10). Defendants argue that "Plaintiff's negligence claim fails as a matter of law because it arises from an alleged breach of contract." (ECF No. 8-1, at 16). Defendants are correct. "It is well established in Maryland that the relationship between the bank and borrower is contractual, not fiduciary, in nature." *Spaulding v. Wells Fargo Bank, N.A.*, 920 F.Supp.2d. 614, 620 (D.Md. 2012). "Moreover, the mere negligent breach of a contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Id.; see also Green*, 927 F.Supp.2d at 250-51.

## F. Civil Conspiracy

Plaintiff's civil conspiracy claim alleges that "Defendant[s] joined together for their mutual gain and benefit." (ECF No. 1, at 23 ¶¶ 130-31). Defendants argue that "Plaintiff did not plead the prima facie elements of his civil conspiracy claim." (ECF No. 8-1, at 17-18). Defendants also note that conspiracy is not a separate tort and concludes that Plaintiff's civil conspiracy claim must be dismissed "[b]ecause all of Plaintiff's tort claims fail[.]" (*Id.* at 17).

A claim of civil conspiracy requires Plaintiff to allege: "(1) [a] confederation of two or more persons by agreement or understanding; (2) [s]ome unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and (3) [a]ctual legal damage resulting to the plaintiff." *Windesheim v. Larocca*, 443 Md. 312, 347 (2015). "Conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Haley*, 659 F.Supp. 2d at 726 (quoting *Alleco Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 189 (1995)). Plaintiff failed to allege any facts that Defendants agreed to commit an unlawful or tortious act. Moreover, because Plaintiff failed to state a claim for his other tort claims, there is no foundational tort to support his allegation of civil conspiracy. *See e.g. Neto v. Rushmore Loan Mgmt. Servs., Inc.*, No. 16-cv-1056-DKC, 2017 WL 896890, at *6 (D.Md. Mar. 7, 2017).

## IV. Dismissal with Prejudice

Plaintiff requested leave to amend the complaint. (ECF No. 14, at 9-10). Defendants requested dismissal with prejudice. (ECF No. 8, at 1-2; ECF No. 8-1, at 18; ECF No. 15 at 1, 10). Fed.R.Civ.P. 15(a)(2) provides that courts should "freely give leave [to amend] when justice so requires," and commits the

matter to the discretion of the district court. *See Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011). "Denial of leave to amend should occur 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *Jarallah v. Thompson*, 123 F.Supp.3d 719, 728 (D.Md. 2015) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

This is the third court in which Plaintiff has challenged the foreclosure of the Property. At no point, in any of the courts, has Plaintiff suggested that he has anything more to add to support his claims. Moreover, Plaintiff failed to move to amend formally and also failed to provide a proposed amended complaint or to indicate his desired amendments. Plaintiff's request for leave to amend the complaint will be denied. *See Willner*, 849 F.3d at 114 ("Where, as here, the plaintiff fails to. . . move to amend and fails to provide the district court with any proposed amended complaint or other indication of the amendments he wishes to make, the district court does not abuse its discretion in denying leave to amend.") (citations and quotation marks omitted); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630–31 (4th Cir. 2008) ("[W]e cannot say that the district court abused its discretion by declining to grant a motion [for leave to amend] that was never properly made.").

## V. Conclusion

For the foregoing reasons, the motion to dismiss filed by Defendants will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
